NCNB NATIONAL BANK OF NORTH CAROLINA v. ROY GUTRIDGE AND WIFE, PEGGY S. GUTRIDGE

No. 8830SC1049

(Filed 20 June 1989)

1. **Bills and Notes § 20 — signing of promissory note by husband — note guaranteed by wife — directed verdict for lender proper**

   The trial court properly granted plaintiff's motion for directed verdict in its action to recover on a promissory note where there was uncontested evidence at trial that defendant husband signed a promissory note in the amount of $50,617.38 and that defendant wife guaranteed payment of the note.

2. **Negligence § 1.3 — failure of lender to perfect security interest in vehicle — negligence claim by borrowers — no statutory basis**

   The trial court properly dismissed defendants' counterclaim for plaintiff's alleged negligence in failing to perfect its security interest in a vehicle, since the purpose of the statutes upon which defendants relied, N.C.G.S. §§ 20-52, 20-52.1(c), and 20-58, is to protect lenders by providing a method for them to protect their security for motor vehicle loans, and the statutes do not provide a basis for negligence claims by borrowers.

APPEAL by defendants from *Hairston, Peter W., Judge.* Judgment entered 10 March 1988 in SWAIN County Superior Court. Heard in the Court of Appeals 17 April 1989.

Plaintiff brought this action against defendants to recover on a promissory note. Defendants filed a counterclaim seeking damages for plaintiff's failure to perfect its security interest in the collateral which secured the note.

Defendants contacted plaintiff bank about obtaining financing to purchase a trolley bus for use with their Cherokee, North Carolina campground business. Defendant Roy Gutridge executed a promissory note and security agreement in favor of plaintiff on 17 May 1984, and received a check payable to him and Trolley Works, Inc., a Florida corporation, in the amount of $48,500.00. Defendant Peggy Gutridge executed an agreement guaranteeing payment of the Roy Gutridge note. At trial defendant subsequently testified that plaintiff's agent told him that the bank would secure a security interest in the trolley, record its lien on the title, and hold the title until defendant repaid the loan in full. The loan officer then telephoned Trolley Works, Inc. and asked that the company note plaintiff's security interest on the title to the vehicle.

Defendant Roy Gutridge endorsed the check and mailed it to Trolley Works, Inc., but did not receive possession of the trolley. Defendants made several payments on the loan, but upon being informed by plaintiff that the lien on the title had not been perfected they travelled to Trolley Works' location in Florida. Defendants then learned that the trolley designated for them had been sold to a third party, and that the company was manufacturing another trolley for them, scheduled for delivery by 1 October 1984. Trolley Works ceased doing business prior to 1 October 1984.

Defendants ceased making payments due under the note, and plaintiff brought this action against them to recover the remaining sum of $50,136.50. Defendants filed a counterclaim seeking to recover damages for their losses allegedly caused by plaintiff's failure to perfect its security interest in the vehicle. Plaintiff moved for a directed verdict at the close of all the evidence. The trial court granted the motion, awarded plaintiff $50,136.50 with interest from the date of default, and dismissed defendants' counterclaim with prejudice.

*McKeever, Edwards, Davis & Hays, P.A., by Fred H. Moody, Jr., for plaintiff-appellee.*

*Alley, Hyler, Killian, Kersten, Davis & Smathers, by Patrick U. Smathers and Robert J. Lopez, for defendant-appellants.*

WELLS, Judge.

## I.  PLAINTIFF'S CLAIM

**[1]**  Defendants assign error to the trial court's granting plaintiff's motion for a directed verdict. In evaluating a motion for directed verdict, the non-movant's evidence must be taken as true and all inconsistencies in the evidence resolved in the non-movant's favor. *Morris v. Bruney*, 78 N.C. App. 668, 338 S.E. 2d 561 (1986). The standard is whether the evidence so considered is sufficient to submit the case to the jury. *Hitchcock v. Cullerton*, 82 N.C. App. 296, 346 S.E. 2d 215 (1986).

The evidence presented at trial to the effect that defendant Roy Gutridge signed a promissory note in the amount of $50,617.38 and that defendant Peggy Gutridge guaranteed payment of the note was uncontested. Defendant Roy Gutridge received a check for $48,500.00, and plaintiff paid $2,117.38 on his behalf for a single premium credit life insurance policy, thereby supplying the consideration for his promise. The note constituted a valid contract and plaintiff was entitled to recover damages following defendants' default.

Defendants contend that plaintiff is precluded from electing to proceed against Roy Gutridge on the promissory note because its own actions caused the loss of the collateral. The promissory note constituted a valid contract between the parties; the collateral served merely to secure the debtor's obligation under the note. In such a case, upon default the lender may proceed against the collateral or directly against the debtor on the note. *See, e.g., Langston v. Brown*, 260 N.C. 518, 133 S.E. 2d 180 (1963). This rule can be varied by agreement of the parties. To adopt the rule expounded by defendants, and preclude the lender from collecting the debt exclusively under the note, would undermine the validity of the underlying *contractual* obligation upon which any security agreement is based. The trial court properly granted plaintiff's motion for directed verdict on its claim and we overrule this assignment of error.

## II.  DEFENDANTS' COUNTERCLAIM

**[2]**  Defendants also argue that the trial court erred in dismissing their counterclaim. They cite portions of the motor vehicles statute governing acquisition and transfer of title and perfecting security interests to support their contention that because the lienholder

controls the processes of perfecting its security interest and obtaining the certificate of title, it owes the debtor-purchaser a duty of care with regard to completing these matters. Statutory provisions relied on by defendants appear as follows:

(a) Every owner of a vehicle subject to registration hereunder shall make application to the Division for the registration thereof and issuance of a certificate of title for such vehicle upon the appropriate form or forms furnished by the Division, . . . . .

(b) When such application refers to a new vehicle purchased from a manufacturer or dealer, such application shall be accompanied with a manufacturer's certificate of origin that is properly assigned to the applicant. If the new vehicle is acquired from a dealer or person located in another jurisdiction other than a manufacturer, the application shall be accompanied with such evidence of ownership as is required by the laws of that jurisdiction duly assigned by the disposer to the purchaser, or, if no such evidence of ownership be required by the laws of such other jurisdiction, a notarized bill of sale from the disposer.

N.C. Gen. Stat. § 20-52 (1983).

. . .

(c) Upon sale of a new vehicle by a dealer to a consumer-purchaser, the dealer shall execute in the presence of a person authorized to administer oaths an assignment of the manufacturer's certificate of origin for the vehicle, including in such assignment the name and address of the transferee and no title to a new motor vehicle acquired by a dealer under the provisions of subsections (a) and (b) of this section shall pass or vest until such assignment is executed and the motor vehicle delivered to the transferee.

Any dealer transferring title to, or an interest in, a new vehicle shall deliver the manufacturer's certificate of origin duly assigned in accordance with the foregoing provision to the transferee at the time of delivering the vehicle, except that where a security interest is obtained in the motor vehicle from the transferee in payment of the purchase price or otherwise, the transferor shall deliver the manufacturer's certificate of origin to the lienholder and the lienholder shall forthwith forward the manufacturer's certificate of origin together with the

transferee's application for certificate of title and necessary fees to the Division. Any person who delivers or accepts a manufacturer's certificate of origin assigned in blank shall be guilty of a misdemeanor.

N.C. Gen. Stat. § 20-52.1(c) (1983).

. . .

Except as provided in G.S. 20-58.8, a security interest in a vehicle of a type for which a certificate of title is required shall be perfected only as hereinafter provided.

(1) If the vehicle is not registered in this State, the application for notation of a security interest shall be the application for certificate of title provided for in G.S. 20-52.

N.C. Gen. Stat. § 20-58 (1983).

In order to prevail on a negligence claim a party must first show that the adversarial party owed him a duty of care. *Bolkhir v. North Carolina State University*, 321 N.C. 706, 365 S.E. 2d 898 (1988). Defendants' premise, that legislative enactments not specifically mentioning tortious conduct can nevertheless establish duties to act and standards of care, is correct. *See, e.g., Bell v. Page*, 271 N.C. 396, 156 S.E. 2d 711 (1967); *Hutchens v. Hankins*, 63 N.C. App. 1, 303 S.E. 2d 584, *disc. rev. denied*, 309 N.C. 191, 305 S.E. 2d 734 (1983). In determining whether portions of statutes are relevant to the existence of a duty of care, a court may consider whether the statute's purpose is to "protect a class of persons which includes the one whose interest is invaded, and . . . to protect the particular interest which is invaded . . . against the kind of harm which has resulted. . . ." *Hutchens, supra (quoting* Restatement (Second) of Torts § 286 (1965) ).

We therefore consider the purpose of the statute in evaluating defendants' contention that it placed a particular duty of care on plaintiff. We are persuaded that the purpose of the provisions of the motor vehicles statute relied upon by defendants is to protect lenders, by providing a method for them to protect their security for motor vehicle loans. These provisions do not provide a basis for negligence claims by borrowers. Defendants could not establish the existence of a duty of care owed to them by plaintiff on the basis of these statutes; the trial court, therefore, properly granted plaintiff's motion for directed verdict and dismissed defendants' counterclaim.

We also reject defendants' argument that there existed a triable issue regarding which party agreed to assume responsibility for perfecting the security interest in the collateral. Even assuming that the parties did enter such an agreement obligating the bank to perfect its security interest, and the bank breached its agreement, this would not entitle defendants to recover on their counterclaim. Defendants were not injured by any such breach because they never acquired title to the vehicle. The agreement they alleged was that plaintiff would perfect its security interest once the collateral was acquired: not that it would obtain title to the vehicle on defendants' behalf.

We have considered defendants' other assignments of error, find them to be without merit, and overrule them.

No error.

Chief Judge HEDRICK and Judge EAGLES concur.