MEMORANDUM OPINION and ORDER
 

 OSTEEN, District Judge.
 

 Plaintiffs Eli Research, Inc. (“Eli”) and Idapat Corporation (“Idapat”) filed this action against Defendants United Communications Group, L.P. (“UCG”), Henry Sporn, Alison Knopf, Elizabeth Heath, and Elizabeth Glaser (collectively, “the Editors”). Plaintiffs assert a wide variety of claims, including claims for violations of the Lanham Act, 15 U.S.C. § 1125
 
 et seq.,
 
 civil conspiracy, defamation, fraud, negligent misrepresentation, misappropriation of trade secrets, unfair and deceptive trade practices, conversion, negligence, breach of duty of good faith, breach of contract, and tortious interference with contractual relations. Plaintiffs seek compensatory and punitive damages, as well as an injunction. This matter is now before the court on Defendants’ Motion to Dismiss. For the reasons stated herein, Defendants’ motion will be granted in part and denied in part.
 

 I. FACTUAL BACKGROUND
 

 The following facts are presented in the
 
 *DCCXCV
 
 light most favorable to Plaintiffs.
 
 [1]
 

 Plaintiff Eli is a Durham, North Carolina-based company engaged in, among other things, the production of newsletters for hospitals, physicians, and other health care providers. On March 29, 2002, Eli purchased the assets of Florida-based Global Success Corporation (“GSC”)-
 
 [2]
 
 Among the assets purchased was a line of 23 “specialty specific medical coding” newsletters
 
 [3]
 
 published by GSC under the business name “The Coding Institute.” Along with these newsletters, Eli purchased assorted publication methodologies, subscriber data, style guides, and other materials necessary for engaging in the specialty specific medical coding newsletter industry.
 

 Defendants Henry Sporn, Alison Knopf, Elizabeth Heath, and Elizabeth Glaser were each employed as independent contract editors by GSC/The Coding Institute. Each had executed contracts that included provisions barring disclosure of GSC’s secret materials and methodologies and non-competition clauses. After the sale of GSC’s assets, the Editors began to work for Eli as contributing editors and writers for Eli’s newsletters. Eli paid the Editors for work they performed for GSC before the asset sale and for work done for Eli afterwards. Sometime after the asset sale, Eli approached the Editors and proposed new contracts to govern their relationship with Eli. The Editors refused to sign the new contracts, and instead offered to work under the same terms that had governed their relationship with GSC. Eli accepted this offer.
 

 In April 2002, the Editors approached Defendant UCG and discussed the possibility of launching specialty specific medical coding publications with UCG. UCG is engaged in a wide variety of publishing operations, with a subscriber base of over 2,000,000. In addition, UCG is a competitor of Eli’s in the specialty specific medical coding field. While the Editors engaged in these discussions with UCG, they continued to work for Eli. In late May and early June 2002, each of the Editors resigned from Eli and soon thereafter began working for UCG. UCG then began publishing several specialty specific medical coding newsletters in fields in which it had never before published, including obstetrics, pediatrics, general surgery, ophthalmology, otolaryngology, urology, radiology, and gastroenterology. Plaintiffs allege that UCG could not get these new publications off the ground without the assistance of the Editors and the use of secret materials of either GSC or Eli that were the subject of the Editors’ non-disclosure agreements.
 

 On September 12 and 13, 2002, Eli filed separate lawsuits against UCG and each of the Editors in the Superior Court of Durham County, North Carolina. UCG removed its case to this court, while the state court entered a temporary restraining order against the Editors. The Editors then removed their cases to this court. On October 2, 2002, this court consolidated the cases
 
 [4]
 
 and granted a preliminary in
 
 *DCCXCVI
 
 junction against Defendants that was later dissolved.
 

 On April 7, 2003, this court permitted Eli to file a new complaint. On April 28, 2003, Eli filed its second amended complaint, adding Idapat as a plaintiff and adding several new claims. On May 28, 2003, Defendants moved to dismiss Idapat and all but one of Plaintiffs’ claims for failure to state a claim upon which relief can be granted under Federal Rule of Civil Procedure 12(b)(6).
 

 II. ANALYSIS
 

 A. Standard of Review
 

 A court should dismiss a case for failure to state a claim upon which relief can be granted under Federal Rule of Civil Procedure 12(b)(6) “only in very limited circumstances.”
 
 Rogers v. Jefferson-Pilot Life Ins. Co.,
 
 883 F.2d 324, 325 (4th Cir.1989). When considering a motion to dismiss, the court must evaluate the complaint in the light most favorable to the plaintiff, accepting as true all well-pleaded factual allegations.
 
 Randall v. United States,
 
 30 F.3d 518, 522 (4th Cir.1994). Dismissal should not be granted “unless it appears certain that the plaintiff can prove no set of facts which would support its claim and would entitle it to relief.”
 
 Mylan Labs., Inc. v. Matkari,
 
 7 F.3d 1130, 1134 (4th Cir.1993). The Supreme Court has emphasized that all that is required at this stage is “a short and plain statement of the claim” sufficient to “give the defendant fair notice of what the plaintiffs claim is and the grounds upon which it rests.”
 
 Swierkiewicz v. Sorema N.A.,
 
 534 U.S. 506, 512, 122 S.Ct. 992, 998, 152 L.Ed.2d 1 (2002) (quoting
 
 Conley v. Gibson,
 
 355 U.S. 41, 47-48, 78 S.Ct. 99, 103, 2 L.Ed.2d 80 (1957)). The Court went on to note that this “simplified notice pleading standard relies on liberal discovery rules and summary judgment motions to define disputed facts and issues and to dispose of unmeritorious claims.”
 
 Id.
 

 B. Contract Claims
 

 Plaintiffs assert four claims based on their contractual relations: two claims for breach of contract, one claim for tortious interference with contractual relations, and one claim for bad faith breach of contract.
 

 In deciding non-federal questions, federal courts must apply the law of the state in which they sit.
 
 United States v. Little,
 
 52 F.3d 495, 498 (4th Cir.1995);
 
 New England Leather Co. v. Feuer Leather Corp.,
 
 942 F.2d 253, 255 (4th Cir.1991). Under North Carolina law, rules affecting the substance of a claim are governed by
 
 lex loci
 
 the law of the situs of the claim.
 
 Boudreau v. Baughman,
 
 322 N.C. 331, 335, 368 S.E.2d 849, 853-54 (1988). For a contract claim, the governing law is determined by
 
 lex loci contractus,
 
 or the law of the place where the contract was formed.
 
 Fortune Ins. Co. v. Owens,
 
 351 N.C. 424, 428, 526 S.E.2d 463, 466 (2000). The place where a contract is formed is determined by the “place at which the last act was done by either of the parties essential to a meeting of the minds.”
 
 Key Motorsports, Inc. v. Speedvision Network, LLC,
 
 40 F.Supp.2d 344, 347 (M.D.N.C.1999) (quoting
 
 Fast v. Gulley,
 
 271 N.C. 208, 212, 155 S.E.2d 507, 510 (1967)).
 

 Plaintiffs first allege breach of the contracts between the Editors and GSC. GSC was a Florida corporation with its principal offices in Naples, Florida. It is not clear where the last act by either of the parties essential to a meeting of the minds occurred, but Plaintiffs have sufficiently alleged a claim for breach of contract under either Florida or North Carolina law.
 

 Defendants’ central argument with regard to the GSC contracts is that under Florida law, personal service con
 
 *DCCXCVII
 
 tracts are not assignable without consent of the parties.
 
 See Orlando Orange Groves Co. v. Hale,
 
 119 Fla. 159, 161 So. 284, 290 (1935);
 
 see also Corporate Express Office Prods., Inc. v. Phillips,
 
 847 So.2d 406, 413-14 (Fla.2003) (holding that personal service contracts may be enforced by the surviving corporation after a merger, but that the employee’s consent is required when a personal service contract is purported to be assigned in a sale of assets). An employee’s continued employment with the new corporation standing alone is not sufficient to constitute consent to the assignment of the contract.
 
 Johnston v. Dockside Fueling of N. Am., Inc.,
 
 658 So.2d 618, 619 (Fla.Dist.Ct.App.1995);
 
 Schweiger v. Hoch,
 
 223 So.2d 557, 559 (Fla.Dist.Ct.App.1969).
 

 Based on these cases, Defendants contend that Plaintiff Eli cannot state a claim upon which relief can be granted based on the GSC contracts, since Eli cannot enforce them without consent. Here, however, Plaintiffs have alleged that the Editors offered to work for Eli under terms identical to the GSC contracts, and that Eh accepted their offers. (Second Am. Compl. ¶¶ 110-11, 113.) These assertions are sufficient to allege consent to the assignment of the contracts because they indicate a knowing agreement to the terms of the contract with a new employer, rather than merely continuing to work for the employer without discussing terms as in
 
 Johnston
 
 and
 
 Schweiger.
 
 Plaintiffs subsequently allege breach of these contracts.
 
 (Id.
 
 ¶¶ 126-27, 420-21.) As such, Plaintiffs have stated a claim for breach of the GSC contracts, and Defendants’ motion as to this claim will be denied.
 

 Eli also asserts a separate claim for breach of contracts that it alleges it entered into with the Editors after acquiring the assets of GSC. The essential elements for a breach of contract claim are the existence of a valid contract and a breach of the terms of that contract.
 
 Poor v. Hill,
 
 138 N.C.App. 19, 27, 530 S.E.2d 838, 843 (2000) (citing
 
 Jackson v. Carolina Hardwood Co.,
 
 120 N.C.App. 870, 871, 463 S.E.2d 571, 572 (1995)). A valid contract requires an agreement based on a meeting of the minds and sufficient consideration.
 
 Creech ex rel. Creech v. Melnik,
 
 147 N.C.App. 471, 477, 556 S.E.2d 587, 591-92 (2001). In addition, a covenant not to compete must be in writing and signed by the party who agrees not to compete. N.C. GemStat. § 75-4.
 

 Defendants assert that Plaintiffs have failed to allege the existence of signed writings for the Eli-Editor contracts, and as such cannot state a claim upon which relief can be granted. Defendants’ assertion contradicts the. plain language of the complaint, which alleges a “valid and binding contract” between Eh and each Editor based on “offers, acceptances, consideration, and written proof of the existence of the contracts.” (Second Am. Compl. ¶ 431.) Such allegations are sufficient to establish the prerequisites for a breach of contract action and give the Defendants notice of Plaintiff Eli’s claim.
 
 [5]
 

 See Swierkiewicz v. Sorema N.A.,
 
 534 U.S. 506, 512, 122 S.Ct. 992, 998, 152 L.Ed.2d 1 (2002) (quoting
 
 Conley v. Gibson,
 
 355 U.S. 41, 47, 78 S.Ct. 99, 103, 2 L.Ed.2d 80 (1957)). Defendants’ motion as to this claim will be denied.
 

 
 *DCCXCVIII
 
 Plaintiffs also assert a claim for tortious interference with contractual obligations against UCG. The elements of a tortious interference claim are (1) a valid contract between the plaintiff and a third party, conferring rights on the plaintiff against the third party; (2) the defendant knows of the contract; (3) the defendant intentionally induces the third party not to perform; (4) the defendant acts without justification; and (5) actual damage to the plaintiff.
 
 Embree Constr. Group, Inc. v. Rafcor, Inc.,
 
 330 N.C. 487, 498, 411 S.E.2d 916, 924 (1992).
 

 Defendants’ argument against this claim is that Plaintiffs have pleaded no valid contracts. As noted above, however, Plaintiffs have sufficiently alleged several valid contracts. Plaintiffs have also alleged that Defendant UCG knew of the contracts (Second Am. Compl. ¶¶ 134, 442) that UCG intentionally induced the Editors to breach their contracts
 
 (id.
 
 ¶¶ 126-35, 181, 443-44), that UCG acted without justification (id ¶¶ 443-45), and that Plaintiffs were actually damaged
 
 (id.
 
 ¶¶ 446-47). These allegations are sufficient to state a claim for tortious interference with contract and to put Defendant UCG on notice as to Plaintiffs’ claim. As such, Defendants’ motion as to this claim will be denied.
 

 Finally, Plaintiffs assert a claim for bad faith breach of contract. In response, Defendants again assert that Plaintiffs have pleaded no valid contracts, a contention that has been rejected by this court. Plaintiffs’ claim, however, does not appear to state a recognized cause of action independent of a claim for breach of contract. Instead, bad faith is usually asserted when seeking punitive damages on a breach of contract theory.
 
 [6]
 
 Plaintiffs have already made one specific claim for punitive damages, which would seem to include the relief sought by their bad faith breach claim. Because Plaintiffs’ bad faith breach of contract claim duplicates their claim for punitive damages, Defendants’ motion will be granted.
 

 C. Misappropriation of Trade Secrets
 

 Plaintiffs also assert a claim against all Defendants for misappropriation of trade secrets under North Carolina General Statute § 66-153. A trade secret is defined as “business or technical information” that both “[d]erives independent actual or potential commercial value from not being generally known or readily ascertainable” and “[i]s the subject of efforts that are reasonable under the circumstances to maintain its secrecy.” N.C. GemStat. § 66-152(3). In addition to this statutory definition, North Carolina courts also look to a six-factor test to assist in the determination of whether materials constitute trade secrets.
 
 See, e.g., Byrd’s Lawn & Landscaping, Inc. v. Smith,
 
 142 N.C.App. 371, 375, 542 S.E.2d 689, 692 (2001);
 
 Wilmington Star-News, Inc. v. New Hanover Reg'l Med. Ctr., Inc.,
 
 125 N.C.App. 174, 180-81, 480 S.E.2d 53, 56 (1997). The six factors include: (1) the extent to which the information is known outside the business; (2) the extent it is known to those within the business; (3) the measures taken to guard its secrecy; (4) the value of the information to the business and its competitors; (5) the
 
 *DCCXCIX
 
 amount of time and money spent to develop the information; and (6) the ease or difficulty of properly acquiring or developing the information by others.
 
 Byrd’s Lawn & Landscaping,
 
 142 N.C.App. at 375, 542 S.E.2d at 692.
 

 Defendants assert that Plaintiffs have failed to allege sufficient reasonable efforts to maintain the secrecy of the alleged trade secrets. Plaintiffs, however, are not required to allege this claim with specificity. Rule 8(a)(2)’s requirement of a “short and plain statement of the claim” is all that is necessary. Here, Plaintiffs have alleged the identity of the trade secrets (Second Am. Compl. ¶¶ 25-27, 70-72), the measures taken to protect their secrecy,
 
 (id.
 
 ¶¶ 28-30, 73-75), their value to Plaintiffs
 
 (id.
 
 ¶¶ 25, 70, 81), and the fact that they cannot easily be duplicated
 
 (id.
 
 ¶¶ 31-32, 79). These allegations are more than sufficient to put Defendants on notice as to what alleged trade secrets are the subject of this action. In addition, Plaintiffs have alleged that Defendants knew of the existence of the trade secrets
 
 (id.
 
 ¶¶ 59-60, 121, 140-41), and that Defendants used the information
 
 (id.
 
 ¶¶ 126, 166, 210-15, 229). Taken together, these assertions are sufficient to allege a prima facie case of misappropriation of trade secrets.
 
 See
 
 N.C. Gen.Stat. § 66-155. Because it does not appear “to a certainty that the plaintiff would be entitled to no relief under any state of facts which could be proved in support of his claim,”
 
 Rogers v. Jefferson-Pilot Life Ins. Co.,
 
 883 F.2d 324, 325 (4th Cir.1989) (quoting
 
 Johnson v. Mueller,
 
 415 F.2d 354, 355 (4th Cir.1969)), Defendants’ motion as to this claim will be denied.
 

 D. Unfair and Deceptive Trade Practices
 

 Plaintiffs next assert a cause of action under North Carolina’s Unfair and Deceptive Trade Practices Act (“UDT-PA”), N.C. Gen.Stat. § 75-1.1
 
 et seq.
 

 [7]
 

 To prevail on such a claim, a plaintiff must prove (1) that defendant committed unfair or deceptive acts, (2) that defendant’s action was in or affecting commerce, and (3) that the act proximately caused injury to the plaintiff.
 
 Dalton v. Camp,
 
 353 N.C. 647, 656, 548 S.E.2d 704, 711 (2001). Typically, employer-employee disputes are deemed beyond the scope of the commerce that section 75-1.1 was intended to protect.
 
 [8]
 

 See id.
 
 at 657, 548 S.E.2d at 711. For the act to apply in an employer-employee dispute, some egregious or aggravating circumstances must be shown.
 
 Id.
 
 In
 
 Sara Lee Corp. v. Carter,
 
 the court concluded that because the employee was a fiduciary and was engaged in buyer-seller transactions of the type usually covered by the act, liability could attach for the employee’s actions. 351 N.C. 27, 33-34, 519 S.E.2d 308, 312 (1999). In
 
 Dalton,
 
 on the other hand, the court held that the statute was not applicable to an employee’s conduct because he was not a fiduciary and was not involved in any buyer-seller transactions. 353 N.C. at 657-58, 548 S.E.2d at 711-12.
 

 Defendants argue that Plaintiffs have failed to plead facts sufficient to establish that Defendants’ actions were in or affecting commerce, and that, given
 
 Dalton,
 
 no claim can be had against the Editors because they were not fiduciaries.
 
 *DCCC
 

 Dalton,
 
 however, does not foreclose the possibility that an employee might be subject to UDTPA liability without being a fiduciary if sufficient egregious or aggravating circumstances were found.
 
 See id.
 

 At this stage in the litigation, however, the court is not considering whether there is sufficient evidence to prove that Defendants engaged in egregious or aggravating circumstances. All that is required is that Plaintiffs’ allegations include enough detail that Defendants have notice of the nature of Plaintiffs’ claim and the facts underlying it. It is clear from the complaint that Plaintiffs are asserting a claim under the UDTPA, and it is clear that the basic facts underlying the claim involve various alleged misrepresentations and actions taken by Defendants that allegedly damaged Plaintiffs. Defendants have not shown there is no set of facts that Plaintiffs could prove that would allow recovery.
 
 See Rogers v. Jefferson-Pilot Life Ins. Co.,
 
 883 F.2d 324, 325 (4th Cir.1989). Defendants’ motion as to this claim will be denied.
 

 E. Negligence
 

 Plaintiffs raise three negligence-based claims against Defendants. The first is a claim of negligence against all Defendants, the second is a claim of negligence against UCG alone, and the third is a claim for gross negligence against all Defendants.
 

 Each of Plaintiffs’ negligence claims is based on Defendants’ alleged failure to act with due care in protecting Eli’s trade secrets. The essential elements of negligence are duty, a breach of that duty, causation, and damages.
 
 Camalier v. Jeffries,
 
 340 N.C. 699, 706, 460 S.E.2d 133, 136 (1995). Here, Defendants argue that they owed Plaintiffs no duty, and, as such, cannot be liable for negligence.
 

 A duty to act for negligence purposes may flow from a contract or statute or may be implied from attendant circumstances.
 
 Huyck Corp. v. C.C. Mangum, Inc.,
 
 309 N.C. 788, 794, 309 S.E.2d 183, 187 (1983). Statutes, even those that do not specifically mention tortious conduct, can establish a duty to act and a standard of care.
 
 See NCNB Nat’l Bank of N.C. v. Gutridge,
 
 94 N.C.App. 344, 348, 380 S.E.2d 408, 411 (1989). To create such a duty, however, the statute must be a public safety statute, that is, it must impose a duty on a person for the protection of others.
 
 See Hart v. Ivey,
 
 332 N.C. 299, 303-04, 420 S.E.2d 174, 177 (1992) (holding that a statute barring the sale of alcohol to those under 21 was not a public safety statute and thus did not trigger a negligence duty);
 
 Gregory v. Kilbride,
 
 150 N.C.App. 601, 610, 565 S.E.2d 685, 692 (2002)
 
 rev. denied,
 
 357 N.C. 164, 580 S.E.2d 365 (2003) (holding that civil commitment statute was not a public safety statute, and thus violation of the statute by a psychiatrist which resulted in a patient killing his wife and himself was not negligence per se). The statute that arguably creates a duty of care in this case is the North Carolina Trade Secret Protection Act, which creates a cause of action for misappropriation of one’s trade secrets.
 
 See
 
 N.C. GemStat. § 66-153. The protection of trade secrets, however, has nothing to do with protecting public safety. As such, it is not the type of statute upon which a negligence duty can be based.
 

 Plaintiffs also argue that North Carolina recognizes a common law duty to protect trade secrets. In
 
 Travenol Labs., Inc. v. Turner,
 
 the North Carolina Court of Appeals, although applying California law, noted that North Carolina recognized a duty of an employee not to disclose an employer’s confidential information. 30 N.C.App. 686, 691, 228 S.E.2d 478, 484 (1976). No North Carolina court, however, has cited this case for that proposition since it was published. Moreover, the
 
 Travenol
 
 decision came five years before North Carolina enacted its Trade Secrets
 
 *DCCCI
 
 Protection Act. The Act largely codified the existing common law of trade secrets protection.
 
 See
 
 David P. Hathaway, Comment,
 
 Is the North Carolina Trade Secrets Protection Act Itself a Secret, and is the Act Worth Protecting?,
 
 77 N.C. L.Rev. 2149, 2150-51 (1999). The common law remains in effect in North Carolina, unless abrogated, otherwise provided for, or obsolete. N.C. GemStat. § 4-1. When the General Assembly legislates “in respect to the subject matter of any common law rule, the statute supplants the common law rule and becomes the public policy of the State in respect to that particular matter.”
 
 McMichael v. Proctor,
 
 243 N.C. 479, 483, 91 S.E.2d 231, 234 (1956);
 
 see also State v. Green,
 
 124 N.C.App. 269, 280, 477 S.E.2d 182, 187 (1996)
 
 aff'd,
 
 348 N.C. 588, 502 S.E.2d 819 (1998). Because the legislature has enacted statutes dealing with the protection of trade secrets and because no North Carolina court has cited
 
 Travenol
 
 for the common law duty since it was published, this court concludes that North Carolina courts would no longer recognize a common law duty not to disclose trade secrets.
 

 Without a statutory or common law duty on which to ground their claims, Plaintiffs’ negligence claims must fail as a matter of law. Without a duty, there is no set of facts that Plaintiffs can prove upon which they could recover.
 
 See Mylan Labs., Inc. v. Matkari,
 
 7 F.3d 1130, 1134 (4th Cir.1993). Plaintiffs’ two claims for negligence, as well as their claim for gross negligence, will be dismissed.
 

 F. Fraud and Misrepresentation
 

 In counts 4 and 5 of the complaint, Plaintiff Eli asserts claims of fraud and negligent misrepresentation against all Defendants. A claim of fraud requires a false representation or concealment of material fact that is reasonably calculated to deceive, made with intent to deceive, which does in fact deceive, which is relied upon by the plaintiff, and which results in damage to the plaintiff.
 
 Pleasant Valley Promenade, L.P. v. Lechmere, Inc.,
 
 120 N.C.App. 650, 663, 464 S.E.2d 47, 57 (1995).
 

 Eli primarily bases its fraud claims on the Editors’ failure to disclose to Eli that they were negotiating for new jobs with UCG. Relying on this silence, Eli alleges, it continued to give the Editors access to secret materials and information regarding its business. Had the Editors disclosed their negotiations, Eli asserts, it would not have continued to allow the Editors to use its materials or be a part of its secret planning meetings.
 
 (See
 
 Second Am. Compl. ¶¶ 134-62.) Defendants respond that Eli’s claims must be dismissed because the Editors were under no duty to disclose the negotiations with UCG.
 

 Failure to disclose the truth can be as much fraud as an affirmative false representation but is only actionable where the party remaining silent has a duty to disclose.
 
 Everts v. Parkinson,
 
 147 N.C.App. 315, 321, 555 S.E.2d 667, 672 (2001). A duty to disclose may arise from a relationship of trust and confidence between the parties.
 
 Setzer v. Old Republic Life Ins. Co.,
 
 257 N.C. 396, 399, 126 S.E.2d 135, 137 (1962). The duty may also arise when one party has information material to the second party but which the second party is unable to obtain.
 
 See Everts,
 
 147 N.C.App. at 321, 555 S.E.2d at 672 (holding that sellers of a house were obligated to disclose its defects to buyers).
 

 The question in this case is whether an employee, or an independent contractor in an employment relationship, has a duty to disclose job negotiations with a competitor to his employer. The North Carolina Court of Appeals has held that in commercial transactions one party to a transaction has no duty to tell the other party that it is negotiating with a third
 
 *DCCCII
 
 party.
 
 Computer Decisions, Inc. v. Rouse Office Mgmt. of N.C., Inc.,
 
 124 N.C.App. 383, 389, 477 S.E.2d 262, 265 (1996). The North Carolina Supreme Court has held that an employee does not owe a fiduciary duty to his employer unless his “position in the workplace resulted in ‘domination and influence on’ ” his employer.
 
 Dalton v. Camp,
 
 353 N.C. 647, 652, 548 S.E.2d 704, 708 (2001) (quoting
 
 Abbitt v. Gregory,
 
 201 N.C. 577, 598, 160 S.E. 896, 906 (1931)). Likewise, an employee owes no additional duty of loyalty to his employer.
 
 Id.
 
 at 653, 548 S.E.2d at 709 (holding that the duty of loyalty creates no cause of action but may serve as an employer’s defense to a claim of wrongful discharge).
 

 Given the above cases, it seems likely that North Carolina courts would hold that an employee or independent contractor has no duty to disclose his employment discussions with a competitor to his present employer.
 
 Dalton
 
 demonstrates that North Carolina courts are extremely hesitant to burden employees with duties to their employers.
 
 Computer Decisions
 
 adds that there is no general duty to disclose contract negotiations absent some special relationship. Taken together, the court concludes that the Editors were under no duty to disclose their negotiations with UCG. As such, Eli’s claims on these grounds cannot state a cause of action for fraud.
 

 Eli also asserts a series of con-cealments and misrepresentations the Editors and UCG made to Eli’s sources, contributing editors, and customers. Eli alleges that Defendants either concealed that they were no longer working for Eli or misrepresented that they still were, even after they had ended their relationship with Eli.
 
 {See
 
 Second Am. Compl. ¶¶ 217-23, 275-83.) Even taking these allegations as true, however, Eli cannot maintain an action for fraud based upon them. Fraud requires actual reliance by the plaintiff, which is “demonstrated by evidence plaintiff acted or refrained from acting in a certain manner due to defendant’s representations.”
 
 Pleasant Valley Promenade, L.P. v. Lechmere, Inc.,
 
 120 N.C.App. 650, 663, 464 S.E.2d 47, 57 (1995) (citing
 
 Libby Hill Seafood Restaurants, Inc. v. Owens,
 
 62 N.C.App. 695, 698, 303 S.E.2d 565, 568 (1983)). Eli has not alleged that it was deceived by or relied upon these misrepresentations and concealments. Third parties, not Eli, were the targets of the alleged deception. As such, if anyone has a claim for fraud, it is the third parties, not Eli. Eli’s claim for fraud will be dismissed.
 

 For similar reasons, Eli’s claim for negligent misrepresentation will also be dismissed. “The tort of negligent misrepresentation occurs when (1) a party justifiably relies (2) to his detriment (3) on information prepared without reasonable care (4) by one who owed the relying party a duty of care.”
 
 Jordan v. Earthgrains Cos., Inc.,
 
 155 N.C.App. 762, 766, 576 S.E.2d 336, 339 (2003) (citing
 
 Raritan River Steel Co. v. Cherry, Bekaert & Holland,
 
 322 N.C. 200, 206, 367 S.E.2d 609, 612 (1988)
 
 rev’d on other grounds,
 
 329 N.C. 646, 407 S.E.2d 178 (1991)). As with Eli’s fraud claims, its allegations that the Editors failed to disclose their negotiations with UCG cannot state a claim for negligent misrepresentation because the Editors owed no duty to Eli. Likewise, Eli’s claims that the Defendants concealed or misrepresented their affiliation with Eli to customers and others cannot be the basis of a claim because it was the third parties, if anyone, not Eli, who would have relied on these statements. For these reasons, Eli’s claim for negligent misrepresentation will be dismissed.
 

 G. Breach of Duties
 

 Eli alone asserts a claim - for breach of the duty of loyalty and good
 
 *DCCCIII
 
 faith against the Editors. As noted above, however, North Carolina law does not recognize a tort claim for breach of loyalty by an employee.
 
 See Dalton v. Camp,
 
 358 N.C. 647, 652, 548 S.E.2d 704, 708 (2001);
 
 Combs & Assoc., Inc. v. Kennedy,
 
 147 N.C.App. 362, 372, 555 S.E.2d 634, 641 (2001). To the extent Eli is attempting to state a claim for breach of the duty of loyalty, that claim must be denied.
 

 Eh also asserts that the Editors have breached the duty of good faith implied in contractual relations. North Carolina courts have held that “[i]n every contract there is an implied covenant of good faith and fair dealing that neither party will do anything which injures the right of the other to receive the benefits of the agreement.”
 
 Bicycle Transit Auth., Inc. v. Bell,
 
 314 N.C. 219, 228, 333 S.E.2d 299, 305 (1985) (quoting
 
 Brown v. Superior Court,
 
 34 Cal.2d 559, 212 P.2d 878, 881 (1949)). Several North Carolina courts have considered claims for breach of this implied covenant as separate claims from traditional breach of contract claims.
 
 See, e.g., Claggett v. Wake Forest Univ.,
 
 126 N.C.App. 602, 610, 486 S.E.2d 443, 447-48 (1997);
 
 Murray v. Nationwide Mut. Ins. Co.,
 
 123 N.C.App. 1, 19, 472 S.E.2d 358, 368 (1996);
 
 see also Polygenex Int’l, Inc. v. Polyzen, Inc.,
 
 133 N.C.App. 245, 251-52, 515 S.E.2d 457, 461-62 (1999) (agreeing with the defendant’s contention that a breach of the implied covenant of good faith cannot exist absent a breach of the terms of a contract).
 

 As noted above, Plaintiffs have sufficiently alleged claims for breaches of contract. Plaintiffs have also alleged conduct that can be viewed as bad faith. As such, Plaintiffs have done enough to put Defendants on notice that they must defend against a claim of breach of the implied duty of good faith. For this reason, Defendants’ motion as to this claim will be denied.
 

 H. Defamation
 

 Eh also asserts a claim of defamation against all Defendants. North Carolina retains two distinct defamation torts, libel and slander. Either type of defamation can be per se when it is found defamatory considered alone, without innuendo or explanatory circumstances.
 
 See Boyce & Isley, PLLC v. Cooper,
 
 153 N.C.App. 25, 29, 568 S.E.2d 893, 898 (2002),
 
 rev. denied,
 
 357 N.C. 163, 580 S.E.2d 361 (2003). Libel per se includes any written publication that (1) charges that a person has committed an infamous crime, (2) charges a person with having an infectious disease, (3) tends to impeach a person in that person’s trade or profession, or (4) otherwise tends to subject one to ridicule, contempt, or disgrace.
 
 Id.
 
 Slander per se is a false oral communication that amounts to (1) an accusation that the plaintiff committed a crime involving moral turpitude, (2) an allegation that impeaches the plaintiff in his trade, business, or profession, or (3) an imputation that the plaintiff has a loathsome disease.
 
 Barker v. Kimberly-Clark Corp.,
 
 136 N.C.App. 455, 459, 524 S.E.2d 821, 824 (2000). In either case, a prima facie presumption of malice and a conclusive presumption of damage arises, obviating the need for the plaintiff to plead and prove special damages.
 
 Id.
 
 at 460, 524 S.E.2d at 825.
 

 When the defamatory character of the words does not appear on their face, but only in connection with extrinsic, explanatory facts, they are only actionable as either libel or slander per quod.
 
 Badame v. Lampke,
 
 242 N.C. 755, 756-57, 89 S.E.2d 466, 467-68 (1955). In this situation, plaintiff is obligated to plead and prove special damage.
 
 Id.
 
 at 757, 89 S.E.2d at 468.
 

 Finally, North Carolina retains a third type of libel, in which the alleged defamatory material is “susceptible of two meanings, one defamatory, and that the defama
 
 *DCCCIV
 
 tory meaning was intended and was so understood by those to whom the publication was made.”
 
 Renwick v. News & Observer Publ’g Co.,
 
 310 N.C. 312, 317, 312 S.E.2d 405, 408 (1984).
 

 The Federal Rules of Civil Procedure do not prescribe a special pleading standard for libel or slander cases. Some courts nevertheless follow a heightened pleading standard, requiring either pleading
 
 in haec verba
 
 (i.e., the precise defamatory words), or requiring pleading of the substance of the words asserted to be defamatory.
 
 [9]
 

 See
 
 5 Charles Alan Wright
 
 &
 
 Arthur R. Miller, Federal Practice & Procedure: Civil 2d § 1245 (1990
 
 &
 
 Supp. 2003). The Fourth Circuit, however, has joined with a growing number of courts in concluding that since the Federal Rules do not mandate a heightened pleading standard for defamation cases, the liberal pleading requirement of Rule 8(a) requiring only a short and plain statement showing the pleader is entitled to relief applies.
 
 See Wuchenich v. Shenandoah Mem’l Hosp.,
 
 No. 99-1273, 2000 WL 665633, at *14 (4th Cir. May 22, 2000) (per curiam);
 
 see also Swierkiewicz v. Sorema N.A.,
 
 534 U.S. 506, 513, 122 S.Ct. 992, 998, 152 L.Ed.2d 1 (noting that unless Rule 9 demands a heightened pleading standard, the simple mandate of Rule 8(a) applies).
 

 Eli primarily asserts two instances of defamation. The first is based on an advertisement allegedly prepared by UCG containing five statements that Eli alleges are false and defamatory. First, Eli alleges that UCG stated that it had 16 years of experience in the coding and reimbursement field, while Eli lacked that experience. Eli further alleges that UCG stated that its newsletter was prepared by veteran “certified” coders, while Eh had no such veteran or certified coders on its staff. Next, Eli asserts that UCG represented that its publications cited to official Medicare and insurer documents and that Eli’s newsletter failed to do so. Eli also alleges that UCG claims to offer a free coding guide, while falsely claiming that Eli does not. Finally, Eli claims that UCG falsely asserts that its newsletter is $50 cheaper than Eli’s.
 

 Even assuming UCG’s claims in its advertisement are false, they do not rise to the level of defamation. The claims do not impeach Eh in its business reputation to the extent required for defamation. The assertions made by UCG do not imply that Eh is dishonest, do not claim that Eh breaches its contracts, and do not have a tendency to damage the relationship between Eli and its employees.
 
 Cf. R.H. Bouligny, Inc. v. United Steelworkers of Am.,
 
 270 N.C. 160, 168, 154 S.E.2d 344, 352 (1967);
 
 Raymond U. v. Duke Univ.,
 
 91 N.C.App. 171, 182, 371 S.E.2d 701, 709 (1988);
 
 Matthews, Cremins, McLean, Inc. v. Nichter,
 
 42 N.C.App. 184, 188, 256 S.E.2d 261, 264 (1979). These assertions are better understood as the factual basis for Eli’s claim under the Lanham Act. As a matter of law they do not rise to the level of defamatory communications recognized by North Carolina law.
 

 Eli’s second alleged instance of defamation involves statements allegedly made by Defendants at various trade shows and other venues. Eh asserts that Defendants told customers, editors, and others that Eh was “mismanaging its company,” that it “engaged in unethical and morally repugnant dealings with its em
 
 *DCCCV
 
 ployees and contractors,” that its substantive work was “shoddy and faulty,” and that Eli was “going bankrupt.” (Second Am. Compl. ¶¶ 270, 272.) These allegations are legally sufficient to reach the level of slander per se. Allegations that Eli is mismanaged, treats its employees and contractors unethically, and performs shoddy work can impugn Eli’s corporate reputation by injuring its business goodwill.
 
 See Bouligny,
 
 270 N.C. at 168, 154 S.E.2d at 352.
 

 It is true that Eli has not pled these claims with the specificity that some courts would require in a defamation action. Nevertheless, Eli has provided at least enough information to put Defendants on notice as to the type of claim they face.
 
 See Wuchenich,
 
 2000 WL 665633, at *14. As noted above, a motion for summary judgment after discovery is the preferred method for disposing of undisputed or un-meritorious claims.
 
 Swierkiewicz,
 
 534 U.S. at 512, 122 S.Ct. at 998 (citing
 
 Conley v. Gibson,
 
 355 U.S. 41, 47-48, 78 S.Ct. 99, 103, 2 L.Ed.2d 80 (1957)). Defendants’ motion to dismiss this claim will be denied.
 

 I. Conversion
 

 Plaintiffs also assert a claim of conversion against all Defendants. Conversion is the “unauthorized assumption and exercise of the right of ownership over goods or personal chattels belonging to another, to the alteration of their condition or the exclusion of an owner’s rights.”
 
 Wall v. Colvard, Inc.,
 
 268 N.C. 43, 49, 149 S.E.2d 559, 564 (1966) (quoting
 
 Peed v. Burleson’s, Inc.,
 
 244 N.C. 437, 439, 94 S.E.2d 351, 353 (1956));
 
 Lake Mary L.P. v. Johnston,
 
 145 N.C.App. 525, 531, 551 S.E.2d 546, 552,
 
 rev. denied,
 
 354 N.C. 363, 557 S.E.2d 538 (2001). The two essential elements are the plaintiffs ownership and wrongful conversion by the defendant.
 
 Lake Mary L.P.,
 
 145 N.C.App. at 532, 551 S.E.2d at 552.
 

 Here, Plaintiffs have alleged their ownership of the materials that they assert have been converted.
 
 (See
 
 Second Am. Compl. ¶¶ 33, 76, 87, 89, 224.) Plaintiffs have likewise alleged Defendants’ unauthorized possession and use of their materials.
 
 (See id.
 
 ¶¶ 126-27, 235-43.) These allegations are more than sufficient to put Defendants on notice of the Plaintiffs’ claim.
 
 [10]
 
 For this reason, Defendants’ motion must be denied as to this claim.
 

 J. Other Claims
 

 Plaintiffs also assert a claim of civil conspiracy against all Defendants. A civil conspiracy requires (1) an agreement between two or more persons to commit a wrongful act; (2) an act in furtherance of the agreement; and (3) damage to the plaintiff as a result.
 
 Pleasant Valley Promenade, L.P., v. Lechmere, Inc.,
 
 120 N.C.App. 650, 657, 464 S.E.2d 47, 54 (1995). Because liability attaches as a result of the wrongful act committed, not the agreement itself, the existence of an underlying tortious act is the key to establishing a civil conspiracy.
 
 See Dickens v. Puryear,
 
 302 N.C. 437, 456, 276 S.E.2d 325, 337 (1981). Here, Defendants have moved to dismiss this claim solely because they argue there is no predicate tort to support it. As noted above, however, Plaintiffs have in fact alleged several tort claims. Plaintiffs’ allegations of various wrongful acts, in addition to their allega
 
 *DCCCVI
 
 tions of agreement between the Defendants are sufficient to put Defendants on notice regarding their claim for civil conspiracy. As such, Defendants’ motion to dismiss this claim will be denied.
 

 Defendants have also moved to dismiss Plaintiffs’ specific claims for in-junctive relief and punitive damages. Defendants are correct when they argue that claims for punitive damages and injunctive relief do not exist as unique causes of action per se.
 
 See, e.g., Shugar v. Guill,
 
 304 N.C. 332, 335, 283 S.E.2d 507, 509 (1981) (holding that a civil action may not be maintained solely for the purpose of collecting punitive damages, and that punitive damages may be awarded only when a cause of action otherwise exists in which at least nominal damages are recoverable). This rule, however, does not mean that a plaintiff cannot make a specific claim in his complaint for these types of relief.
 
 [11]
 

 As to Plaintiffs’ claim for injunctive relief, Defendants’ only argument is that Plaintiffs have failed to state any cause of action upon which injunctive relief may be granted. Since the court has denied much of Defendants’ motion to dismiss, claims do remain upon which injunctive relief might be granted. Thus the court will not dismiss Plaintiffs’ specific claim for injunctive relief.
 
 Cf. Haylash v. Volvo Trucks of N. Am.,
 
 No. 1:97CV1135, 1998 U.S. Dist. LEXIS 12511, at *8-9 (M.D.N.C. Apr. 10, 1998) (dismissing claims for punitive damages and injunctive relief specifically labeled as causes of action but agreeing to consider them as part of the plaintiffs prayer for judgment).
 

 Regarding the claim for punitive damages, Defendants again move to dismiss solely on the grounds that there remain no claims upon which a claim for punitive damages may be predicated. As noted above, however, claims do remain in this case. In addition, Plaintiffs have alleged that Defendants engaged in wilful or wanton conduct or acted with malice.
 
 See
 
 N.C. Gen.Stat. § 1D-I5(a) (describing the aggravating factors that permit an award of punitive damages). For these reasons, the court will not dismiss Plaintiffs’ specific claim for punitive damages.
 

 III. IDAPAT
 

 Idapat is included as a plaintiff in 10 of the claims against Defendants.
 

 Defendants have moved to dismiss Ida-pat from the case, arguing that Idapat, having either sold the assets upon which the claims are based to Eli, or having assigned the claims themselves to Eli, has no interest in the case. Plaintiffs respond by asserting that even though Idapat is in the process of winding up its business, it is still capable of suing and being sued under Florida law. Plaintiffs’ interpretation of Florida law may well be true, but it does not change the fact that Idapat has no interest in this case.
 

 Plaintiffs admit in their complaint that on March 29, 2002, Eli purchased all of then-GSC’s assets, including its alleged secret information referred to by Plaintiffs as “The GSC Materials.” (Second Am. Compl. ¶ 83.) Also included in the purchased assets were all of GSC’s rights in any restrictive covenants and confidentiality agreements between GSC and any of its employees or contractors, including the Editors.
 
 (See id.
 
 ¶¶ 90-91.) Without any rights in the alleged trade secrets, GSC/Idapat has suffered no injury that would be remedied by a claim for misappropriation of trade secrets, conversion, or
 
 *DCCCVII
 
 negligence with respect to the safeguarding of trade secrets. Likewise, having assigned its rights to enforce the contracts with the Editors, GSC/Idapat cannot bring claims for breach of contract or tortious interference with contractual relations.
 
 See Lipe v. Guilford, Nat’l Bank,
 
 236 N.C. 328, 331, 72 S.E.2d 759, 762 (1952) (holding that once a right is assigned, the assignor cannot maintain an action on it because he has no interest in it). Without the trade secrets and the contracts, GSC/Idapat can also assert no injury upon which to ground a claim for unfair and deceptive trade practices. Finally, without any of the above tortious conduct, GSC/Idapat cannot assert any claim for civil conspiracy, since recovery on such a claim is premised upon the existence of a predicate tort.
 
 See Dickens v. Puryear,
 
 302 N.C. 437, 456, 276 S.E.2d 325, 337 (1981). For these reasons, Idapat Corporation will be dismissed as a plaintiff in this action.
 

 IV. CONCLUSION
 

 For the reasons stated above,
 

 IT IS ORDERED that Defendants’ Motion to Dismiss [79] is GRANTED in part and DENIED in part. Plaintiff Idapat Corporation is dismissed from the case, as are Plaintiffs’ claims for fraud (Count 4), negligent misrepresentation (Count 5), negligence (Counts 9 and 11), breach of the duty of loyalty (part of Count 10), gross negligence (Count 12), and bad faith breach of contract (Count 16).
 

 [1]
 

 . When considering a motion to dismiss, the court must evaluate the complaint in the light most favorable to the plaintiff, accepting as true all well-pleaded factual allegations.
 
 Randall v. United States,
 
 30 F.3d 518, 522 (4th Cir.1994).
 

 [2]
 

 . After its assets were sold, GSC changed its name to Idapat. Idapat is still a valid Florida corporation, capable of suing and being sued.
 

 [3]
 

 . These newsletters help health care providers and their staffs properly “code” their activities for insurance reimbursement purposes.
 

 [4]
 

 . The four cases against the Editors, 1:02CV798, -799, -800, and -801 were consolidated into the lead case, 1:02CV787.
 

 [5]
 

 . If, as Defendants assert, no written contract existed, that fact should become clear during discovery. The use of motions for summary judgment after discovery is the preferred method for disposing of undisputed or unmer-itorious claims.
 
 Swierkiewicz v. Sorema N.A.,
 
 534 U.S. 506, 512, 122 S.Ct. 992, 998, 152 L.Ed.2d 1 (2002) (citing
 
 Conley v. Gibson,
 
 355 U.S. 41, 47-48, 78 S.Ct 99, 103, 2 L.Ed.2d 80 (1957)).
 

 [6]
 

 . North Carolina courts, it should be noted, are very reluctant to grant punitive damages in a breach of contract case.
 
 See Shore v. Farmer,
 
 351 N.C. 166, 170, 522 S.E.2d 73, 76 (1999);
 
 Newton v. Standard Fire Ins. Co.,
 
 291 N.C. 105, 111, 229 S.E.2d 297, 301 (1976). Punitive damages can be awarded, however, "when the breach of contract also constitutes or is accompanied by an identifiable tortious act” plus "some element of aggravation.”
 
 Shore,
 
 351 N.C. at 170, 522 S.E.2d at 76 (quoting
 
 Newton,
 
 291 N.C. at 112, 229 S.E.2d at 301).
 

 [7]
 

 . The act makes unlawful "[u]nfair methods of competition, in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce.” N.C. Gen.Stat. § 75-1.1.
 

 [8]
 

 . The statute broadly defines commerce as "all business activities, however denom-mated” while specifically excluding "professional services rendered by a member of a learned profession.” N.C. Gen.Stat. § 75-1.1(b). Besides excluding most employer-employee disputes, courts have further narrowed the scope of the definition by excluding securities transactions.
 
 See Dalton v. Camp,
 
 353 N.C. 647, 657, 548 S.E.2d 704, 711 (2001).
 

 [9]
 

 . For example, at least one case in this district has held that while allegedly defamatory words need not be pleaded verbatim, they must be alleged " 'substantially'
 
 in haec ver-ba.” Carter v. Duke Medical Ctr.,
 
 No. 1:95CV00042, 1995 U.S. Dist. LEXIS 16145, at *6 (M.D.N.C. Oct. 3, 1995) (quoting
 
 Stutts v. Duke Power Co.,
 
 47 N.C.App. 76, 84, 266 S.E.2d 861, 866 (1980)).
 

 [10]
 

 . Defendants also assert that Plaintiffs’ claims fail as a matter of law because intangible interests cannot be the subject of a conversion action.
 
 See Norman v. Nash Johnson & Sons' Farms, Inc.,
 
 140 N.C.App. 390, 414, 537 S.E.2d 248, 264 (2000). Even though Defendants’ citation of law is correct, it is inapplicable to this case. Plaintiffs have alleged the conversion of various tangible items, such as style guides, editorial manuals, and subscriber lists.
 
 (See, e.g.,
 
 Second Am. Compl. ¶¶ 26, 290.)
 

 [11]
 

 . Indeed, in the North Carolina courts, a specific claim for punitive damages is required.
 
 See
 
 N.C. Gen.Stat. § 1A-1, Rule 9(k) (mandating that demands for punitive damages be specifically stated, with the aggravating factor permitting such damages being averred with particularity).